UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JULIA RICHMOND,                                  :
            Plaintiff,                          :
                                                        :   **OPINION AND ORDER**
v.                                               :
                                                         :   22 CV 10075 (VB)
ALAN J. SORENSEN,                                :
            Defendant.                          :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Julia Richmond brings this action pursuant to 42 U.S.C. § 1983 alleging defendant Alan J. Sorensen violated her Fourteenth Amendment right as a public employee to be free from gender discrimination.

    Now pending is defendant's motion for summary judgment. (Doc. #35).

    For the reasons set forth below, the motion is GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    The parties have submitted briefs, statements of material fact pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

I.    Plaintiff's Employment

    From October 2016 until the termination of her employment in December 2021, plaintiff served as Deputy Commissioner of the Orange County (the "County") Department of Planning and Development (the "Department"). She was appointed to the position by the Department's former Commissioner. In March 2020, defendant was appointed as the Department's new Commissioner.

Plaintiff and defendant previously worked together for two years in the early 2000s when both were employed by Sullivan County. In 2001, defendant, who was then the Sullivan County Commissioner of Planning, hired plaintiff as his Deputy Commissioner of Planning. They worked together until defendant left his position in 2003. Plaintiff contends that during her employment at the Sullivan County, defendant was "intimidated" by plaintiff and prevented plaintiff from fulfilling her duties as Deputy Commissioner. (Doc. #40-1 ("Pl. Depo.") at 51–52).

After joining the Department as Deputy Commissioner in 2016, plaintiff served as the Project Manager on the West Central Transportation and Land Use Study (the "West Central Study"). The West Central Study focused on several transportation corridors and key intersections in the County, and the Department retained an outside consultant to assist with the project. (Doc. #37 ¶ 24). In addition, plaintiff oversaw Orange County's Motor Vehicle Emission Simulator ("MOVES") study, which required the County to prepare an analysis of air pollutants, greenhouse gases, and other air toxins emitted from mobile sources. Due to the technical nature of the study, plaintiff was involved in retaining consultants to conduct the requisite analysis. (Id. at ¶ 31).

Plaintiff's responsibilities also included the duties of the Director of the Orange County Transportation Council (the "OCTC"). The OCTC is the Metropolitan Planning Organization (the "MPO") for Orange County, a statutorily created organization that advises on transportation projects that use federal funds. Department employees staff the OCTC on behalf of the County. The OCTC is tasked with developing the annual United Planning Work Program (the "UPWP") detailing the County's plans for the expenditure of federal funds. (Doc. #37 ¶¶ 16–17).

Although there is no formal appointment procedure for the role of Director of the OCTC, plaintiff chaired the OCTC meetings. (Pl. Depo. at 99).

In late 2021, defendant developed concerns about plaintiff's job performance. Defendant contends he learned of project redundancies in the West Central Study—including development plans for an intersection that was already the subject of another transportation project—and invoicing inconsistencies. (Doc. #37 ¶¶ 26–30; Doc. #36-7 at 71). In addition, defendant asserts plaintiff directed a contractor to begin work on a MOVES analysis before a contract was in place. (Doc. #37 ¶¶ 31–32). Finally, in October 2021, defendant informed plaintiff he would take over the role of Director of the OCTC. Despite this change, defendant asserts plaintiff continued to identify herself as the OCTC Director in relevant contracts. (Id. at ¶¶ 33–35).

Plaintiff disputes the accuracy of defendant's claims about her job performance. According to plaintiff, any inconsistencies in the West Central Study were premature and would eventually have been resolved. (Pl. Depo. at 78). As for the MOVES contract, plaintiff did not recall if she authorized a contractor to begin working on the MOVES analysis before a contract was confirmed, and even if she had, she contends such approval would have been consistent with Department practice. (Doc. #42 ¶ 20). As for the OCTC documents, plaintiff asserts she retained her title because she was still the main point of contact for the OCTC. (Doc. #46 at 8–9).

On November 4, 2021, defendant wrote a memorandum to file regarding several deficiencies in plaintiff's performance, particularly relating to the MOVES analysis and the West Central Study. (Doc. #36-8). Plaintiff acknowledges she and defendant discussed these issues "on different occasions" and in "miscellaneous conversations," but disputes that defendant ever told her to improve upon these issues or risk impacting her job. (Pl. Depo. at 64–65, 97).

Plaintiff otherwise contends she was not aware of defendant's concerns about her job performance.

II.     Plaintiff's Termination and Replacement

On December 8, 2021, plaintiff met with defendant and a human resources ("HR") representative. Defendant informed plaintiff, an at-will employee, that he had "decided to go in another direction" with the Deputy Commissioner position and handed plaintiff a letter terminating her employment. (Pl. Depo. at 105). The letter did not provide any reasons for the termination. (Doc. #36-5). When plaintiff asked why she was being terminated, neither defendant nor the HR representative responded. In the weeks following her termination, plaintiff inquired with different HR employees regarding the reasons for her termination but received no response.

In November 2021, prior to plaintiff's termination, another employee in the Department, Ashlee Long, resigned to take a position in another county. Long was a Planner in the Department but also performed administrative duties for the OCTC, including completing the OCTC Agenda, preparing the annual UPWP, and coordinating program changes. Long had assumed these responsibilities after the former Deputy Commissioner of Planning, John Czamanske, who had previously performed these functions, retired in 2016. (Doc. #37 at ¶ 15). Czamanske had also previously served as the Director of the OCTC.

After Long resigned, defendant attempted to hire Long as a consultant to train another employee in the Department, Lauren Bennett, to assume some of Long's responsibilities, particularly those relating to the UPWP. Long declined. Instead, defendant appointed Czamanske as Deputy Commissioner of Planning. (Doc. #37 at ¶¶ 19–22). In this role, Czamanske was primarily tasked with training Bennett on the UPWP duties and was also

4

assigned some of plaintiff's and Long's responsibilities. Czamanske served as Deputy Commissioner from December 2021 to March 2022 and received a higher salary than plaintiff had received in the role. (Doc. #36-14). Eventually, a woman was hired permanently to fill the Deputy Commissioner position. (Doc. #37 at ¶¶ 39–42).

III.    Evidence of Discriminatory Behavior

Prior to her termination, plaintiff had not complained of discriminatory treatment by defendant or anyone else in the Department. There is no evidence defendant made disparaging remarks towards plaintiff. (Pl. Depo. at 127–28). For the duration of her employment at the County, plaintiff testified her relationship with defendant was "pleasant." (Id. at 62–63).

Plaintiff alleges defendant mistreated women in the Department and would discipline women but not men for the same kinds of infractions. She contends that of the two male employees in the department, one was promoted, and the other was not disciplined for behavior for which similarly situated female employees were disciplined. According to the record, defendant promoted eight female employees in the Department during his time as Commissioner, in addition to the male employee.

**DISCUSSION**

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[1]

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Section 1983 Gender Discrimination Claim

Defendant argues he is entitled to summary judgment because he has proffered a legitimate, nondiscriminatory reason for terminating plaintiff's employment and no reasonable jury could conclude that gender was the "but-for" cause of plaintiff's termination.

The Court agrees.

A.      Legal Standard

The Equal Protection Clause of the Fourteenth Amendment provides public employees with the right to be free from discrimination, including gender discrimination.  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  A public employee may bring a discrimination claim pursuant to Section 1983 against "any responsible persons acting under color of state law."  Id.  "A state employee acting in his official capacity is acting under color of state law."  Id.  To establish a Section 1983 claim, a plaintiff must show (i) the defendant is a person acting under color of state law, and (ii) the defendant caused the plaintiff to be deprived of a federal right.  Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004).  Moreover, the defendant must be personally involved in the alleged constitutional deprivations to warrant an award of damages under Section 1983.  Id.

At the summary judgment stage, discrimination claims are analyzed under the familiar burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, a plaintiff establishes a prima facie case of discrimination by

7

demonstrating "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998).

After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If an employer meets this burden, the burden shifts back to the plaintiff to show that a reasonable jury could conclude the employer's explanation is merely a pretext for actual discrimination. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981). A plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999).

To show pretext under Section 1983, a plaintiff must "establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action." Naumovski v. Norris, 934 F.3d 200, 214 (2d Cir. 2019). Put another way, a plaintiff must show that the adverse employment action "would not have occurred in the absence of . . . the defendant's conduct." Id. at 213. Unlike claims brought under Title VII, which incorporate a "lessened causation standard," id., a plaintiff bringing "a Section 1983 claim bears a higher burden in establishing that the employer's alternative, nondiscriminatory reason for the adverse employment action is pretextual." Tyson v. Town of Ramapo, 677 F. Supp. 3d 173, 180–81 (S.D.N.Y. 2023). In other words, the plaintiff must establish that "the employer's stated reasons would not, alone, constitute a sufficient basis for pursuing an adverse action." Naumovski v.

8

Norris, 934 F.3d at 215 (emphasis original). To do so, a Section 1983 plaintiff must show "the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." Id.

   B.   Analysis

As a threshold matter, the parties do not contest that defendant, in his role as Commissioner of the Orange County Planning Department, was acting under color of state law when he decided to terminate plaintiff's employment.

As to the merits of plaintiff's claim, assuming plaintiff has met her prima facie burden, defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment—namely, plaintiff's poor job performance. The burden thus shifts to plaintiff to show defendant's proffered reason is pretext for unlawful gender discrimination. More specifically, to survive summary judgment, plaintiff must present admissible evidence sufficient for a reasonable jury to infer her termination would not have occurred but-for the gender discrimination. Naumovski v. Norris, 934 F.3d at 214.

   1.   Direct Evidence

Besides the fact of her termination, plaintiff adduces no evidence of defendant's discriminatory treatment and offers only conclusory statements about defendant's purported animus against women in the Department. Viewing the totality of the evidence in the light most favorable to the plaintiff, plaintiff fails to raise a triable issue that defendant's non-discriminatory reason for her termination was pretext for gender discrimination.

Plaintiff's principal evidence of defendant's discriminatory behavior is his decision to terminate her employment without explanation. Although defendant was not required to provide an explanation for plaintiff's termination, since plaintiff was an at-will employee, an employer's

inconsistent reasoning for terminating an employee may be indicia of pretext. See EEOC v. Ethan Allan Inc., 44 F.3d 116, 120 (2d Cir. 1994).  Yet a Section 1983 plaintiff must still demonstrate the discrimination was the "but-for" cause for the adverse action such that "the employer's stated reasons would not, alone, constitute a sufficient basis for pursuing an adverse action." Naumovski v. Norris, 934 F.3d at 214–15.  Here, there is sufficient evidence that defendant found plaintiff's job performance unsatisfactory.  Defendant authored a detailed memorandum to file outlining instances of unsatisfactory job performance and spoke to plaintiff about these issues.

Although plaintiff disputes that defendant expressed any concerns or directed her to improve her job performance, a lack of explicit instructions from defendant to prevent future inefficiencies, protocol lapses, or other project-related errors does not undermine the documented existing record of unsatisfactory job performance.  As plaintiff has provided no evidence that she performed her duties in a satisfactory manner, and offers merely conclusory allegations disputing defendant's concerns, she cannot, as a matter of law, demonstrate defendant's "accusations of poor job performance were only a pretext for . . . discrimination." Thermidor v. Beth Israel Medical Center, 683 F. Supp. 403, 412 (S.D.N.Y. 1988).  Therefore, plaintiff fails to show that defendant's reason, standing alone, would not be sufficient basis for her termination.

Moreover, defendant previously appointed plaintiff to the role of Deputy Commissioner when both plaintiff and defendant worked at Sullivan County, which "strongly suggests that invidious discrimination is unlikely." Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000).  Rather than adducing any evidence to support her allegations of preferential treatment, plaintiff's claims are largely driven by plaintiff's feelings and beliefs regarding defendant's alleged discriminatory animus against women.  But plaintiff's "feelings and perceptions of being

discriminated against are not evidence of discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999). Therefore, plaintiff's allegation that defendant's purported discriminatory animus drove her termination is not enough to create a triable issue of fact.

Finally, defendant's decision to temporarily appoint Czamanske to plaintiff's position does not demonstrate pretext. Plaintiff contends Czamanske did not perform all of plaintiff's duties yet was paid a higher salary, which defendant does not dispute. While hiring a man temporarily to fill a position held by a woman may establish a prima facie case of discrimination, see Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1239 (2d Cir. 1995), plaintiff must establish that her gender "played a decisive role" in her termination to show defendant's legitimate, nondiscriminatory reason for her termination is pretextual. Naumovski v. Norris, 934 F.3d at 217. Though plaintiff does not need to show that gender discrimination was the only reason, see Bostock v. Clayton County, 590 U.S. 644, 656 (2020), she must demonstrate that gender was the "but-for" cause of her termination such that it "actually played a role" and "had a determinative influence" on the employer's decision-making process. Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009).

Here, plaintiff cannot demonstrate Czamanske's interim appointment proves that her gender "played a decisive role" in her termination. It is undisputed that Czamanske—who served as Deputy Commissioner before plaintiff—was appointed to perform plaintiff's and Long's duties and to train Bennett on the OCTC. (Pl. Depo. at 126). Czamanske served as the Deputy Commissioner for approximately four months and was eventually replaced by a woman. Czamanske's qualifications and interim role, the staffing needs of the Department at the time of his appointment, and the fact a woman was hired permanently as Deputy Commissioner undermine plaintiff's contention that her gender "had a determinative influence" on defendant's

11

decision to terminate her employment. Therefore, Czamanske's appointment is insufficient to demonstrate pretext.

Even construing the record evidence in plaintiff's favor, plaintiff's evidence relating to her termination and Czamanske's appointment is insufficient to raise a reasonable inference that her termination would not have happened but-for her gender and that defendant's nondiscriminatory reason was pretextual.

### 2. Circumstantial Evidence

Besides her termination, plaintiff points to no other evidence that defendant discriminated against her personally. Instead, she attempts to highlight other indicia of discrimination in the remaining evidentiary record, but advances only conclusory arguments in doing so. Yet "even in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008).

First, plaintiff contends in conclusory fashion that defendant discriminated against women because he selectively disciplined female employees but did not discipline male employees for similar behavior, and promoted men over women in the Department. Yet plaintiff fails to adduce any evidence of any disciplinary discrepancies between men and women, and further fails to demonstrate these men and women were similarly situated "in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). Instead, the record indicates defendant promoted over eight female employees during his tenure as Commissioner, in addition to promoting one male employee.

Second, plaintiff disputes the truth of defendant's concerns regarding her performance. She contends any inconsistencies in the West Central Study were to be resolved at a future date, she did not recall if she authorized a contractor to begin working on the MOVES analysis before

12

a contract was confirmed, and she retained her name and title on OCTC documents because she was still the main point of contact for the OCTC. (Doc. #40-1 at 78; Doc. #40-1 at 70; Doc. #46 at 8–9).

None of these contentions is persuasive. In a discrimination case, "the truth of the allegations against the plaintiff" are not determinative. McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006). Rather, the Court is "interested in what motivated the employer; the factual validity of the underlying imputation against the employee is not at issue." Id. Defendant does not bear the burden of persuasion but must only "raise a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). That is, the employer is not required to "persuade the court that it was motivated by the reason it provides," but must only "articulate an explanation that, if true, would connote lawful behavior." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).

Here, defendant successfully articulates a non-discriminatory explanation for plaintiff's termination and adduces evidence of his documented concerns. Unlike cases where there is "not a single mention" of such concerns in an employee's personnel file, see Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 39 (2d Cir. 1994), defendant outlined his concerns with plaintiff's performance in a detailed memorandum to file and raised these issues with plaintiff, which plaintiff does not dispute. What plaintiff does contest, however, is the substance of these reviews, but "plaintiff's subjective disagreement with [her] reviews is not a viable basis for a discrimination claim." Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999). Therefore, plaintiff's disagreement with defendant's evaluations of her job performance is insufficient to show pretext.

Plaintiff contends that discriminatory animus can be inferred from defendant's decision to terminate her without explanation. Absent any additional evidence of discriminatory treatment from defendant, plaintiff attempts to demonstrate defendant's alleged discriminatory animus against women but fails to support this allegation with any evidence beyond conclusory assertions. When, as here, "an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." Risco v. McHugh, 868 F. Supp. 2d 75, 98 (S.D.N.Y. 2012). Plaintiff may believe gender discrimination was the reason for her termination, but, based on the evidence at summary judgment, even viewing the facts in the light most favorable to the plaintiff, a reasonable jury could not reach the same conclusion.

Accordingly, the Court finds plaintiff, as a matter of law, cannot meet her burden to show that gender discrimination was the "but-for" cause of her termination.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #35) and close this case.

Dated: January 6, 2025
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge